UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X          Civ. Case No:

LAURA JONES,

                            Plaintiff,          **COMPLAINT**

             -against-          **PLAINTIFF DEMANDS A
TRIAL BY JURY**

FUND FOR THE CITY OF NEW YORK,
FUND FOR THE CITY OF NEW YORK, INC.,
FOUNDATION FOR COURT INNOVATION INC.,
CENTER FOR COURT INNOVATION,
MARK GOULD, individually,
COLETA WALKER, individually,
JULIE TAYLOR, individually,
GLADYS BROOKS, individually,
JAMES REDDICK, individually,

                           Defendants.

----------------------------------------------------------------------X

To the above-named Defendants:

       Plaintiff, LAURA JONES (hereinafter "Plaintiff" by and through her attorneys, DEREK

SMITH LAW GROUP, PLLC, files this complaint against Defendants upon information and

belief as follows:

## NATURE OF CASE

       1.      Plaintiff complaint pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964,

as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of

1991, Pub. L. No. 102-166) ("Title VII"), 42 U.S.C. §1981, U.S.C. §1983 Equal Protection Clause

of the Fourteenth Amendment to the United States Constitution ("Equal Protection Clause"), New

York City Human Rights Law ("NYCHRL") §§8-107 et. seq., New York State Human Rights Law

Executive Law §296, N.Y. ADC. LAW § 8-903 "Gender Motivated Violence Act", and New York state common law based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking declaratory and injunctive, relief and damages to redress the injuries that Plaintiff has suffered as a result of sexual harassment, sexual assault, discrimination, hostile work environment, retaliation, and constructive discharge on the basis of her sex/gender, sexual orientation, race, for making complaints about such unlawful acts by Defendants as well as assault, battery, negligent infliction of emotional distress, and intentional infliction of emotional distress.

## JURISDICTION AND VENUE

2.      Jurisdiction of this action is conferred upon this Court as this action involves a Federal Question under Title VII and 42 U.S.C. §1983.  The Court also has jurisdiction pursuant to 28 U.S.C. §1331, and pendent jurisdiction thereto.

3.      Additionally, this Court also has supplemental jurisdiction over the State and City causes of action asserted herein.

4.      Around May 9, 2022, Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC").

5.      Around November 2, 2022, Plaintiff received a Right to Sue Letter from the EEOC.

6.      Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7.      Venue is proper in this District as the Defendants' principal place of business and the events or omissions that give rise to the claims asserted herein occurred within the Southern District of New York.

## PARTIES

8.      Plaintiff LAURA JONES (hereinafter "Plaintiff" and/or "JONES") is a black, bisexual, female that resides in Bronx County, New York.

9.      At all times material, Defendant FUND FOR THE CITY OF NEW YORK is a nonprofit organization duly existing by the virtue and laws of the State of New York and doing business in the State of New York.

10.      At all times material, Defendant FUND FOR THE CITY OF NEW YORK maintains its principal place of business at 121 Sixth Avenue 6th Floor, New York, New York 10013.

11.      At all times material, Defendant FUND FOR THE CITY OF NEW YORK, INC. is a nonprofit organization duly existing by the virtue and laws of the State of New York and doing business in the State of New York.

12.      At all times material, FUND FOR THE CITY OF NEW YORK, INC. maintains its principal place of business at 1133 Avenue of the Americas, New York, New York 10036.

13.      At all times material, Defendant FOUNDATION FOR COURT INNOVATION INC. is a nonprofit organization duly existing by the virtue and laws of the State of New York and doing business in the State of New York.

14.      At all times material, Defendant FOUNDATION FOR COURT INNOVATION INC. maintains its principal place of business at 270 Broadway New York, New York, 10007.

15.      At all times material, Defendant CENTER FOR COURT INNOVATION is a nonprofit organization duly existing by the virtue and laws of the State of New York and doing business in the State of New York.

16.      At all times material, Defendant CENTER FOR COURT INNOVATION maintains its principal place of business at 520 8th Avenue 18th Floor, New York, New York 10018.

17.     Defendant CENTER FOR COURT INNOVATION has many outreach programs in the community including Save Our Streets ("S.O.S").

18.     As per their website "S.O.S. seeks to end gun violence at the neighborhood level by changing local norms around violence and creating opportunities for meaningful educational and employment opportunities within the community."

19.     At all times material, MARK GOULD (hereinafter referred to as "GOULD") was and is the Associate Director of Community Safety for Defendants.

20.     At all times material, GOULD held supervisory authority over Plaintiff with respect to her employment, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

21.     At all times material, COLETA WALKER (hereinafter referred to as "WALKER") was the Program Coordinator of Defendants.

22.     At all times material, WALKER held supervisory authority over Plaintiff with respect to her employment, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

23.     At all times material, GLADYS BROOKS (hereinafter referred to as "BROOKS") was and is a Supervisor of Defendants.

24.     At all times material, BROOKS held supervisory authority over Plaintiff with respect to her employment, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

25.     At all times material, JULIE TAYLOR (hereinafter referred to as "TAYLOR") was and is the Program Director for Defendants.

26.     At all times material, TAYLOR held supervisory authority over Plaintiff with respect to her employment, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

27.     At all times material, JAMES REDDICK (hereinafter "REDDICK") was and is employed by Defendants.

28.     At all times material, REDDICK was Plaintiff's coworker.

## MATERIAL FACTS

29.     Around August 16, 2021, Defendants hired Plaintiff as an Outreach Worker in the S.O.S. outreach program.

30.     At all times material, Defendant GOULD was Plaintiff's direct supervisor.

31.     At all times material, Defendant GOULD was aware of Plaintiff's sexual orientation.

32.     Throughout the entirety of Plaintiff's employment, Defendant GOULD repeatedly subjected Plaintiff to extreme sexual harassment, assault, and discrimination on the basis of her sex/gender, race, and sexual orientation.

33.     Between August 16, 2021, and April 14, 2022, Defendant GOULD made sexually explicit comments about Plaintiff's sexual orientation. By way of example only, Defendant GOULD told Plaintiff that "he would love to see her go down on a female" and how he would like to see friends of Plaintiff's that were bisexual like her.

34.     Defendant GOULD made sexually explicit comments and sounds mocking Plaintiff eating fruit in front of her coworkers. Defendant GOULD then asked Plaintiff if she had more bisexual friends for his "bike crew"[1] to entertain them at their playhouse.

---

[1] At all times material, GOULD made it known to Plaintiff that GOULD was in a motorcycle gang and his "friends" or "bike crew" were members of the same motorcycle gang.

35.     Defendants subjected Plaintiff to sexual harassment and a hostile work environment on the basis of her sex/gender and sexual orientation.

36.     Defendant GOULD discriminated against Plaintiff on the basis of her sex/gender by telling Plaintiff that she should wear a v-neck top to show her breasts, that Plaintiff's shoulders were built like a linebacker, and ridiculed the way Plaintiff's uniform or clothing fit her body.

37.     During Plaintiff's employment, Defendant GOULD made derogatory racial comments such as all Puerto Rican males are gay and that Puerto Rican females are good sexual partners and they listen to what you tell them to do.

38.     Notably, GOULD gave Plaintiff's coworker "S"[2] favorable treatment because she was a Puerto Rican female. By way of example only, on one occasion when GOULD, Plaintiff, "S", and other employees were out in the neighborhood, GOULD allowed "S" to use the restroom in the office while refusing Plaintiff to use the restroom. Due to GOULD's unlawful discriminatory conduct, Plaintiff urinated on herself.

39.     Shortly after Plaintiff started working for Defendants, Plaintiff learned about a former employee named "L." After "L" made a sexual harassment complaint against Defendant GOULD was no longer employed by Defendants.

40.     At all times material, Defendants were aware of Defendant GOULD's discriminatory conduct and failed to take any remedial actions. Instead, Defendants' perpetuated a hostile work environment filled with sexual harassment and discrimination.

41.     Around late February 2022, Defendant GOULD sexually assaulted Plaintiff. **Defendant GOULD forced Plaintiff to kiss his penis and threatened Plaintiff that if she did not kiss his penis Plaintiff would no longer have a job like "L."**

---

[2] Plaintiff's coworker's names are abbreviated herein to protect their identities.

42.     Around January 10, 2022, Plaintiff informed GOULD that Plaintiff was unable to work because Plaintiff's son tested positive for COVID-19. GOULD told Plaintiff that if she wanted to care for her son and not lose her job Plaintiff had to purchase GOULD a liquor bottle.

43.     At all times material, GOULD discriminated against Plaintiff because of her sex/gender.

44.     At all times material, GOULD used his position of authority to threaten, discriminate, intimidate, and sexually assault and abuse Plaintiff.

45.     Around March 1, 2022, Plaintiff could no longer tolerate Defendant GOULD's discriminatory treatment and sought an opportunity to be removed from his supervision by applying for a lateral transfer in a different program of Defendants.

46.     Around March 30, 2022, Plaintiff and GOULD learned that Plaintiff obtained the lateral transfer and would no longer be under GOULD's supervision. However, GOULD threatened Plaintiff's new position if Plaintiff did not purchase him two bottles of liquor. GOULD repeatedly told Plaintiff that she owed him.

47.     Around April 1, 2022, GOULD, Plaintiff and Plaintiff's coworker, REDDICK worked an event. At the end of the event a bakery shared leftover donuts with the staff. When Plaintiff took two donuts, Plaintiff's colleague grabbed the bag of donuts and threw them in the trash while calling Plaintiff greedy. Thereafter GOULD, Plaintiff and REDDICK rode in the same car back to the office. During the car ride, REDDICK boasted to GOULD of what he did to Plaintiff and told GOULD that Plaintiff ate like a man.

48.     When they returned to the office, Plaintiff complained to GOULD about REDDICK's discriminatory conduct towards her and GOULD told Plaintiff not to say anything.

GOULD told Plaintiff that if she complained about REDDICK's conduct would hinder and/or affect Plaintiff's new position.

49.     At all times material, GOULD used his position of authority to intimidate Plaintiff from making complaints of the ongoing discriminatory conduct.

50.     However, when Plaintiff received the new position, Plaintiff's new supervisor GLADYS BROOKS told Plaintiff that they would not treat her the same or speak to her the way they did in the S.O.S. program.

51.     At all times material, Defendants were aware of GOULD's discriminatory unlawful conduct and failed to take any remedial measures.

52.     Defendants perpetuated a toxic, hostile work environment filled with sexual harassment and discriminatory treatment on the basis of sex/gender.

53.     After Plaintiff received the new position, GOULD's sexual assault and discriminatory animus towards Plaintiff escalated.

54.     Around April 14, 2022, GOULD told Plaintiff that Plaintiff needed to report to the storage unit to get uniforms with Plaintiff's new coworker "E."

55.     Plaintiff was suspicious by GOULD's request. Therefore, Plaintiff contacted her new supervisor COLETA WALKER to confirm GOULD's request. After receiving such confirmation, Plaintiff intentionally arrived twenty minutes late to avoid being alone with GOULD in the storage unit.

56.     **After Plaintiff and GOULD walked into the storage unit, GOULD closed the storage unit door up to calf/ankle level and moved Plaintiff towards a chair. GOULD told Plaintiff "you know what I want, you owe me." GOULD pulled down his pants and with his penis in his hand said you better do a good job if not my friends would make sure you did a**

**good job and you can kiss your new job goodbye.[3] GOULD forced his penis into Plaintiff's mouth and called Plaintiff his "work bitch" and "not to cross him." GOULD perversely forced Plaintiff to pinch his nipples while performing oral sex on him.**

57.     **Defendant GOULD then slapped Plaintiff's face knocking off Plaintiff's white glasses to the ground. Defendant GOULD perversely said "you better do a good job or my friends will make sure you do" and "say my name."**

58.     At that moment, another storage unit owner called out for GOULD to move his vehicle because he was double parked.

59.     Thereafter, Plaintiff was in shock and returned to the office to find coworker "E" already at the office. Coworker "E" then informed Plaintiff that he had picked up his uniform the day before.

60.     Between April 15, 2022, and April 21, 2022, although Plaintiff made any and every attempt to distance herself from GOULD, GOULD continued to harass Plaintiff and have Plaintiff work under his supervision.

61.     At all times material, Plaintiff felt fearful and forced to comply with GOULD's commands or else risk losing her job.

62.     Around April 16, 2022, GOULD forced Plaintiff to work an Easter event with him even though Plaintiff should have been off that day.

63.     During the event, Defendant GOULD told Plaintiff that he put in a good word for Plaintiff with her new boss.

64.     On April 21, 2022, while working in the office, Plaintiff caught Defendant GOULD staring at her. Overwhelmed by Defendant GOULD's relentless, abhorrent, unlawful behavior,

---

[3] At all times material, GOULD made it known that GOULD was in a motorcycle gang called "Unholy" and his "friends" or "bike crew" were members of the motorcycle gang.

Plaintiff developed a headache. Plaintiff stepped out of the office with a male coworker to get medicine and fruit to take with the medicine. Upon their return, Defendant GOULD was pacing in the office looking for Plaintiff.

65.     Defendant GOULD confronted Plaintiff asking if Plaintiff took lunch. When Plaintiff replied no and showed GOULD a bag of fruit, Defendant GOULD became visibly upset and said "who the fuck do you think you are talking to?" Defendant GOULD then proceeded to ask Plaintiff's coworkers in the office, "ya'll see Laura disrespecting me?" Defendant GOULD told his coworker to tell Plaintiff "to say nothing to me." Plaintiff then told her coworker to do the same for her. As Plaintiff attempted to walk away, **Defendant GOULD charged at and assaulted Plaintiff.**

66.     Two of Plaintiff's coworkers physically restrained Defendant GOULD as he shouted "matter of fact I don't want you here."

67.     Plaintiff then left the office and contacted her new supervisor, GLADYS BROOKS about what had transpired.

68.     Notably, Defendant GOULD did not ask Plaintiff's male coworker, "E" if he took lunch.

69.     At all times material, Defendants were aware of Defendants' GOULD's discriminatory treatment and failed to take any remedial actions.

70.     On April 22, 2022, BROOKS met with Plaintiff and Defendant GOULD in the office to discuss Defendant GOULD's assault.

71.     During the meeting, Plaintiff was visibly uncomfortable and could not even look Defendant GOULD in the eyes.

72.     After the meeting, Plaintiff complained to her supervisor BROOKS and JULIE TAYLOR that Plaintiff was upset by the handling of Defendant GOULD's assault on Plaintiff and that Defendant GOULD previously sexually assaulted Plaintiff.

73.     At all times material, Defendants failed to take any corrective action against GOULD.

74.     Thereafter, Defendants retaliated against Plaintiff for engaging in a protected activity by telling Plaintiff that she could use her sick and vacation days while Defendants investigated Plaintiff's complaints.

75.     Defendants also had Plaintiff work remotely while GOULD continued working in the office and has since been promoted.

76.     At all times material, Defendant GOULD discriminated against Plaintiff on the basis of her sex/gender, race and sexual orientation and subjected Plaintiff to a hostile work environment on the basis of her sex/gender, race and sexual orientation.

77.     Defendant GOULD's extreme sexual harassment, discriminatory conduct, and sexual assault made Plaintiff extremely distraught.

78.     As a result of GOULD's unlawful discriminatory conduct, Plaintiff was and is constantly living in fear for her safety, job and health.

79.     Around May 5, 2022, Plaintiff was evaluated by a medical provider for any sexually transmitted diseases from the sexual assault on April 14, 2022.

80.     Around May 6, 2022, Plaintiff informed the police that GOULD assaulted her more than once.

81.     As a result of the Defendants' conduct complained of herein, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

82.     Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

83.     As a result of the above discriminatory and retaliatory conduct, Plaintiff has suffered and will continue to suffer emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

84.     Defendants' actions constituted a continuing violation of the applicable federal, state and city laws.

85.     The above are just some of the examples of unlawful discrimination and retaliation to which Defendants subjected the Plaintiff on a continuous and on-going basis throughout Plaintiff's employment.

86.     Plaintiff claims a continuous practice of discrimination and retaliation and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

87.     Defendants unlawfully discriminated against Plaintiff because of her sex/gender, race and sexual orientation and because she complained and/or opposed Defendants' unlawful conduct related to her sex/gender, race, and sexual orientation.

88.     Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

89.     Plaintiff further claims constructive discharge as a result of the unlawful discrimination and retaliation.

90.     Plaintiff hereby requests lost wages, emotional distress, punitive damages, and attorney fees.

91.     Around May 31, 2022, Defendants' Defendants constructively discharged Plaintiff.

92.     Defendants' failure to take remedial measures, retaliatory treatment and discrimination against Plaintiff made Plaintiff overwhelmed, anxious, afraid, and unstable. Plaintiff could no longer work under those conditions.

93.     Defendants' conduct created an abusive and unhealthy work environment for Plaintiff.

94.     The aforementioned conduct by Defendants unreasonably interfered with Plaintiff's work environment.

95.     Defendants engaged in a pattern and practice of permitting, condoning, and even encouraging the above type of illegal behavior.

96.     The above are only some of the instances of harassment, discrimination, and retaliation to which defendants subjected Plaintiff.

97.     Plaintiff was subjected to instances of sexual assault, sexual harassment, discrimination, and a hostile work environment on a continual, pervasive, frequent and ongoing basis.

98.     Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

99.     Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

100.    Plaintiff claims unlawful constructive and/or unlawful actual discharge and also seeks reinstatement.

101.    Plaintiff claims alternatively (in the event Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

Furthermore, in such case, Plaintiff claims that Defendants owed and breach its duty to Plaintiff to prevent the harassment, discrimination, retaliation and is liable therefore for negligence.

102.    The above are only some examples of the types of unlawful and sexual conduct to which Defendants subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION**
**FOR VIOLATIONS OF EQUAL PROTECTION CLAUSE**
**42 U.S.C. § 1983**

103.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104.    Plaintiff claims Defendants violated 42 U.S.C. § 1983, which states in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

105.    The Fourteenth Amendment of the United States Constitution states in relevant part that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall

any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

106.    Plaintiff is an individual whom Defendants denied equal protection of the laws by discriminating against on the basis of Plaintiff's sex/gender and race.

107.    Defendant's discrimination based the above protected class is not substantially related to a sufficiently important governmental interest.

108.    Defendants further deprived Plaintiff of the right to life, liberty, and equal protection of the laws.

109.    Each of the Defendants violated the Plaintiff's constitutional rights as set forth herein, including but not limited to depriving Plaintiff of equal protection of the laws.

110.    Defendants violated the above section as set forth herein.

111.    The individual governmental defendants are being sued herein in their individual and official capacities.

112.    Defendants further engaged in an unlawful discriminatory custom, procedure and/or practice of unlawful discrimination as set forth herein.

113.    Plaintiff's protected characteristics were a determinative or motivating factor in Defendants' employment actions.

114.    Defendants acted under color of state law.

115.    Defendants acted with the intent to discriminate and upon a continuing course of conduct.

116.    Moreover, this case unquestionably involves official policy: Defendants and its policymaking officials, the individual Defendants, (1) directed that the violations occur; (2) authorized the violations; (3) agreed to subordinates' decisions to engage in the violations; (4)

provided inadequate training; (5) provided inadequate supervision; and (6) failed to adopt needed policies to prevent the violations.

117.    Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

118.    As a result of Defendants' violations of Plaintiff's Equal Protection rights, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**AS A SECOND CAUSE OF ACTION**
**UNDER FEDERAL LAW**
**42 U.S.C. §1981 (DISCRIMINATION & HOSTILE WORK ENVIRONMENT)**
**(AGAINST ALL INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL**
**CAPACITY)**

119.    Plaintiff, individually and on behalf of all persons similarly situated, repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

120.    42 U.S. Code § 1981 provides: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

121.    For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

122.    The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

123.    Defendants discriminated against Plaintiff on the basis of her race, in violation of 42 U.S.C. §1981 and have suffered damages as set forth herein.

124.    As a result of Defendants' discrimination in violation of §1981, Plaintiff was denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's employment which provided substantial compensation and benefits, thereby entitling them to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling Plaintiff to compensatory damages.

125.    As alleged above, Defendants' acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

126.    Plaintiff, as a member of the Black and/or African American race, was discriminated against by Defendants because of her race as provided under 42 USC § 1981 and has suffered damages as set forth herein.

127.    Defendants subjected Plaintiff to a hostile work environment on the basis of her race and color.

128.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION**
**UNDER FEDERAL LAW**
**42 U.S.C. §1981 (RETALIATION)**
**(AGAINST ALL INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITY)**

129.    Plaintiff, individually and on behalf of all persons similarly situated, repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

130.    42 U.S. Code § 1981 provides: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains penalties, taxes, licenses, and exactions of every kind, and to no other. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits privileges, terms, and conditions of the contractual relationship. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

131.    Plaintiff claims unlawful retaliation under 42 U.S.C. §1981 for opposing Defendants unlawful employment practices.

132.    As a result of Defendants' discrimination in violation of §1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's employment which provided substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling Plaintiff to compensatory damages.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

133.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

134.    Executive Law § 296 provides that   1. (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

135.    Defendant engaged in an unlawful discriminatory practice by otherwise discriminating against the Plaintiff because of Plaintiff's sex/gender, race, and sexual orientation.

## AS A FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW

136.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

137.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

138.    Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

139.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

140.    New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

141.    Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct outlined the above discriminatory, unlawful and retaliatory conduct.

## AS A SEVENTH CAUSE OF ACTION
## ASSAULT & BATTERY

142.    Plaintiff repeats and realleges each and every allegation made in this complaint as if they were set forth herein fully at length.

143.    That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendant in suddenly and without provocation Defendant GOULD did physically assault and batter Plaintiff herein causing Plaintiff to sustain damages; in that Defendant did conduct himself in a wanton, willful, reckless and heedless manner without regard to the safety of the Plaintiff herein; in that said Defendant was physically abusive; in behaving in a disorderly manner; in using unnecessary, excessive and unlawful touching against the plaintiff; in willfully and maliciously assaulting and battering the Plaintiff herein.

144.    As a result of Defendant's acts of assault and battery, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

20

145.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

146.    The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

147.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of Plaintiff's gender, sexual harassment and hostile work environment.

148.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

**AS A NINTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
<u>THE NEW YORK CITY ADMINISTRATIVE CODE</u>**

149.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

150.    The New York City Administrative Code Tide 8, §8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer... , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

151.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A TENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

152.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

153.    The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

154.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE

155.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

156.    Section 8-107(19), Entitled Interference with Protected Rights provides that: "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

157. Defendants violated the above section as set forth herein.

## AS A TWELFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE SUPERVISORY LIABILITY

158. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

159. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

160. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

161. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

i.          The employee or agent exercised managerial or supervisory responsibility; or

ii. The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

iii. The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

162.    Defendants violated the above section as set forth herein.

## AS A THIRTEENTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

163.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

164.    Defendant GOULD's actions were intentional and/or reckless.

165.    Defendant GOULD's conduct was extreme and outrageous.

166.    As a result of said actions and conduct, Plaintiff has suffered and continues to suffer from severe emotional distress.

## AS A FOURTEENTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

167.    Plaintiff repeats and re-alleges each and every allegation made in the complaint as if they were set forth herein fully at length.

168.    Defendant's behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

169.    Defendant had a duty of care to Plaintiff to not assault her.

170.    Defendant violated that duty.

171.    Defendant's breach of duty caused Plaintiff to suffer numerous injuries as set forth herein.

172.    As a result of Defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A FIFTEENTH CAUSE OF ACTION
## FOR VIOLATIONS OF THE
## GENDER MOTIVATED VIOLENCE PROTECTION ACT

173.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

174.    N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter:

a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.

b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.


175.    N.Y. ADC. LAW § 8-904 : NY Code–Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief:

1. compensatory and punitive damages;

2. injunctive and declaratory relief;

3. attorneys' fees and costs;

4. such other relief as a court may deem appropriate."

176.    Defendant GOULD's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

177.    As a result of defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A SIXTEENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

178.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

179.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . ."

180.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by subjecting Plaintiff to discrimination on the basis of her sex/gender.

181.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTEENTH CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII

182.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

183.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful

employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

184.    The exact number of employees at Defendants is unknown, but upon information and belief, there are well more than the statutory minimum

185.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.,* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

186.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## INJURY AND DAMAGES

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of her career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain, humiliation, mental anguish, suffering, inconvenience, injury to reputation, aggravation, activation, and/or exacerbation of any preexisting condition, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## JURY DEMAND

Plaintiff demands a jury on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorneys' fees, costs, medical expenses,

interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

Dated:  New York, New York
        November 14, 2022

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC

By   /s/ Melissa Mendoza
Melissa Mendoza, Esq.
*Attorneys for Plaintiff*
One Penn Plaza, Suite 4905
New York, New York 10119
Tel.: (212) 587-0760